IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0336 WHA |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| DEANDRE WATSON, | ) | DATE: July 23, 2007 |
| | ) | TIME: 9:00 a.m. |
| Defendant. | ) | |

**DEFENDANT DEANDRE WATSON'S MOTION TO AMEND OR REVOKE DETENTION ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTIONS**

SCOTT A. SUGARMAN (No. 68277)
SUGARMAN & CANNON
44 Montgomery St., Suite 2080
San Francisco, CA. 94104
Telephone: (415) 362-6252
Facsimile: (415) 677-9445

Attorneys for Defendant
DEANDRE WATSON

**TABLE OF CONTENTS**

A.    PROCEDURAL HISTORY OF THE PROSECUTION ……………………………………2

B.    ALLEGATIONS AGAINST THE DEFENDANTS ……………………………………3

C.    STANDARDS FOR REVIEWING A MAGISTRATE'S
       DETENTION ORDER AND FOR DETERMINING WHETHER
       A DEFENDANT SHOULD BE DETAINED ……………………..……………………4

D.    DEANDRE WATSON HAS STRONG COMMUNITY
       TIES AND DOES NOT PRESENT A DANGER TO THIS
       COMMUNITY ………………………………………………………………...…………11

E.    THE GOVERNMENT CAN NOT CARRY ITS BURDEN OF
       PROOF TO SHOW THAT DEANDRE WATSON MUST BE
       DETAINED PENDING TRIAL ……………………………………………..…………14

       1.    THE FAILURE TO SHOW PROBABLE CAUSE……………………………14

       2.    DEANDRE IS NOT A DANGER TO THE COMMUNITY………………15

       3.    DEANDRE IS NOT A FLIGHT RISK…………………………………………18

       4.    THE PROPOSED CONDITIONS REASONABLY ASSURE
              BOTH HIS PRESENCE IN COURT AND THE SAFETY OF
              THE COMMUNITY……………………………………………………………19

CONCLUSION………………………………………………………………………...…21

# TABLE OF AUTHORITIES

## CASES

Government of Virgin Islands v. Leycock, 678 F.2d 467 (3rd Cir. 1982) ....................................9

Herzog v. United States, 75 S. Ct. 349 (1955) ...........................................................6

Holloway v. United States, 526 U.S. 1 (1999) ...........................................................16

Sellers v. United States, 89 S. Ct. 36 (1968) ...........................................................5

United States v. $67,220.00 in United States Currency, 957 F.2d 280 (6th Cir. 1992) ...............18

United States v. $215,300 in United States Currency, 882 F.2d 417 (9th Cir. 1989) ..................18

United States v. Acevedo-Ramos, 755 F.2d 203 (1st Cir. 1985).......................................12

United States v. Carter, 996 F. Supp. 260 (W.D.N.Y. 1998) ..........................................18

United States v. Chen, 820 F. Supp. 1205 (N.Cal. 1992).....................................5, 6, 7, 8, 9, 10, 21

United States v. Frushon, 10 F.3d 663 (9th Cir. 1993)...................................................18

United States v. Gebro, 948 F.2d 1118 (9th Cir. 1991)..................................................8, 9

United States v. Himler, 797 F.2d 156 (3rd Cir.1986) ...................................................9

United States v. Hurtado, 779 F.2d 1467 (11th Cir.1985)...........................................8, 10

United States v. Kemp, 938 F.2d 1020 (9th Cir. 1991)..................................................18

United States v. Koenig, 912 F.2d 1190 (9th Cir. 1990) ...............................................10

United States v. McGill, 604 F.2d 1252 (9th Cir.1979), cert. denied, 444 U.S. 1035 (1980)..........6

United States v. Mezas de Jesus, 217 F.3d 638 (9th Cir. 2000) ......................................9

United States v. Motamedi, 767 F.2d 1403 (9th Cir. 1985) .......................................5, 6, 8, 9, 21

United States v. Orta, 760 F.2d 887 (8th Cir. 1985).....................................................6

United States v. Townsend, 897 F.2d 989 (9th Cir. 1990) ...........................................6, 9

United States v. Twine, 344 F.3d 987 (9th Cir. 2003).............................................16, 18

# UNITED STATES CONSTITUTION

4th Amendment.................................................................................4

5th Amendment.................................................................................4

8th Amendment.................................................................................4

# STATUTES

18 U.S.C. § 2.................................................................................2

18 U.S.C. § 924(c).................................................................................2

18 U.S.C. § 2119.................................................................................15

18 U.S.C. § 3142 .................................................................5, 6, 7, 8, 9

18 U.S.C. § 3142(c)(2).................................................................5, 10

18 U.S.C. § 3142(f).................................................................5, 9

18 U.S.C. § 3142(f)(1).................................................................18

18 U.S.C. § 3142(f)(1)(A).................................................................5

18 U.S.C. § 3142(j).................................................................5

18 U.S.C. § 3145.................................................................10

18 U.S.C. § 3156(a)(4).................................................................18

SCOTT A. SUGARMAN (No. 68277)
SUGARMAN & CANNON
44 Montgomery St., Suite 2080
San Francisco, CA. 94104
Telephone: (415) 362-6252
Facsimile: (415) 677-9445

Attorneys for Defendant
    DEANDRE WATSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No. CR 07-0336 WHA |
| Plaintiff, | ) | |
| v. | ) | |
| DEANDRE WATSON, | ) | DATE: July 23, 2007 |
| | ) | TIME: 9:00 a.m. |
| Defendant. | ) | |

**DEFENDANT DEANDRE WATSON'S MOTION TO AMEND OR REVOKE DETENTION ORDER AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION**

The question presented to this Court is whether the government has surmounted its substantial burdens to show that this Court has no choice but to detain 19-year-old Deandre Watson pending trial. While the charge against him is serious and the government's motion to detain is not frivolous, the government has wholly failed to carry its burden of proof. This Court should and must release Watson from custody.

The government claims that in March 2007 both defendants took a rental car that had been left unoccupied by a woman named by the government only as AW. The two young men allegedly jumped into the car, which had been left with the keys in the ignition and the engine running as AW walked away from the car. While AW claims that as she turned back toward the departing car codefendant Bibbs pulled out a handgun from a place of concealment in his clothing and pointed

that weapon at her.  Neither AW nor the government has ever claimed that Deandre Watson possessed, brandished or used a gun at any time or knew that Bibbs had used a weapon.  Deandre, then only 18 years old, simply drove off with the car.

An hour or so later, San Francisco Police Officers stopped that car occupied by four men.  AW later claimed that codefendant Bibbs was the man who brandished the gun and that Deandre Watson drove the car away.  Both were then prosecuted for that alleged crime over the next two and one-half months in the San Francisco Superior Court until the U.S. Attorney charged them for the same incident in this Court.  Mr. Watson turned 19 in June while this matter was pending in this Court.

Both the premise and structure of the Bail Reform Act requires that only a very few individuals should or can be detained.  Deandre Watson is a life-long resident of the Bay Area.  He is not a flight risk and does not pose a danger to the community.  The government can not show by a "clear preponderance" of the evidence that he is a flight risk nor show by "clear and convincing evidence" that he is a danger to the community, and can not show that no combination of conditions will reasonably assure both his appearance and the safety of the community.  Hence, this Court should order that Deandre Watson be released on appropriate conditions.

## A.      PROCEDURAL HISTORY OF THE PROSECUTION

Both defendants were arrested on March 15, 2007, and were soon thereafter charged in the San Francisco Superior Court by the San Francisco District Attorney with carjacking under California law.  The court appointed counsel for each individual and set bail, but neither defendant was able to post the money bail set.  The case was prosecuted in the Superior Court for more than two months.

On May 25, 2007, the government filed a Complaint in this Court charging both Deandre Watson and Maurice Bibbs with carjacking.  On May 29th, both defendants were indicted for carjacking (18 U.S.C. §§ 2 and 2119) and use of a firearm (18 U.S.C. §§ 2 and 924(c)).

The government sought to detain both individuals.  Counsel for Bibbs promptly filed a motion to require the government to present for examination and cross-examination AW and any other necessary witness.  Exhibit A.  Deandre Watson joined that motion (Exh. B), and the government filed an Opposition.  Exhibit C.  Bibbs filed a Reply to the Opposition.  Exhibit D.

Magistrate Judge Zimmerman held a joint detention hearing for both Watson and Bibbs on June 7, 2007.  Magistrate Zimmerman simultaneously considered both the government's application to detain both defendants and defendants' motion that the issue of detention not be decided on the government's proffer of facts.  Defendants asked that the court require the government to present lives witnesses and allow defense counsel to cross-examine them.  Further, Bibbs' counsel expressly during the hearing stated that he wished to subpoena AW to testify at the detention hearing.

Magistrate Zimmerman denied defendants' request for testimony and to present witnesses and resolved the issue of detention on the government's proffer.  Exhibit E.  He ordered that both defendants be detained, and later issued a written decision as to each defendant.  The decision as to Deandre Watson is Exhibit F.

## B.     ALLEGATIONS AGAINST THE DEFENDANTS

The government alleged that at approximately 11:00 p.m. on March 14, 2007, the complainant, identified only "AW," walked away from a rental car, with the keys in the ignition and the engine running, on Dakota Street in the Potrero Hill section of San Francisco.  She saw two men she reportedly did not know walk past her.  As AW was walking away from the passenger side of the car, she saw the two men jump into her rental car (one entering the driver's side and one the front passenger side) and start to drive away.  AW reportedly began to walk back toward the passenger side of the car, when the individual in the passenger seat pulled a black handgun from inside his clothing and pointed the gun at her.  As she turned to leave, AW alleged that she heard the gun "click" twice.  The men drove the car away.

Police officers responded to the scene and questioned her. She claimed that the man with the gun had gold work on his teeth and described the gun as black. Otherwise, AW offered a generic description of two young Black males in blue jeans and dark "hoodies."

About an hour later, San Francisco police officers saw the AW's rental car being driven near Golden Gate and Polk Streets, and began to follow the car. Once other San Francisco officers arrived, the officers stopped that car at 6th and Howard Streets. The four occupants of the car were detained without incident or any chase. The occupants offered no resistance to the officers. Co-defendant Bibbs was driving the car and Deandre Watson was in the front passenger seat. Two other young Black men were in the back seat.

Officers brought AW to the scene of the car stop. AW allegedly claimed that co-defendant Bibbs was the man who held the gun and that Deandre Watson was the man who took the car. Officers found a chrome-colored gun under the passenger seat, with a bullet stuck in the chamber.

The government has also charged co-defendant Bibbs alone with attempting to intimidate AW during a telephone call by Bibbs to AW from jail on March 19, 2007. Deandre Watson did not participate in that telephone call and is not charged in that count.

**C.    STANDARDS FOR REVIEWING A MAGISTRATE'S DETENTION ORDER AND FOR DETERMINING WHETHER A DEFENDANT SHOULD BE DETAINED**

The government's ability to detain a defendant in jail prior to trial is limited by the Constitution and statute, specifically the Bail Reform Act set forth in 18 U.S.C. § 3142 et seq. Whenever a court orders the detention of an accused before trial, that court must be mindful that pretrial detention is at odds with several constitutional rights -- the right to bail (8th Amendment), to be free of unreasonable seizures (4th Amendment) and not be denied one's liberty without due process of law (5th Amendment).

Mindful of these constitutional rights, the Ninth Circuit, in an opinion by then-Judge Kennedy, has expressly ruled that "only in rare circumstances should release be denied." *United States v. Motamedi,* 767 F.2d 1403, 1407 (9th Cir. 1985) citing *Sellers v. United States,* 89 S.Ct. 36,

38, 21 L.Ed.2d 64 (1968) (Black, J., in chambers) and other cases.  Accord *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).  Further, "[d]oubts regarding the propriety of release should be resolved in favor of the defendant." *Motamedi*, 767 F.2d at 1407, citing *Herzog v. United States,* 75 S.Ct. 349, 351, 99 L.Ed. 1299 (1955) and *United States v. McGill,* 604 F.2d 1252, 1255 (9th Cir.1979), *cert. denied,* 444 U.S. 1035, 100 S.Ct. 708, 62 L.Ed.2d 671 (1980).  Accord *United States v. Chen*, 820, F.Supp. 1205, 1207 (N.Cal. 1992).

The Bail Reform Act sets a structure for the release of a defendant pending trial.  First and foremost, the statute embodies a presumption generally is in favor of the release of every defendant, who is presumed innocent (18 U.S.C. § 3142(j)).  Section 3142(c)(2) provides that a defendant must be released under be "the least restrictive" condition or combination of conditions that will reasonably assure the appearance of the person as required. 18 U.S.C. § 3142(c)(2). *Motamedi*, 767 F.2d at 1407; *Chen*, 820 F.Supp. at 1207.[1]  It is important to note that the statute does not limit release to circumstances where the court is assured the defendant will not flee or pose a danger to the community – only a "reasonable assurance" is required.  The standard is "reasonable assurances, not absolute guarantees." *United States v. Orta*, 760 F.2d 887, 881, 884, fn.4 (8th Cir. 1985) (en banc).

Only in a limited number of instances may the crime charged or the circumstances of the accused permit a court to detain the defendant.  The only circumstances under which a court may consider the detention of the defendant are those specified in 18 U.S.C. § 3142(f), which most often arise from the particular crime charged, such as a drug offense where the maximum term is ten years or more.  As relevant here, the government may move for detention where the case involves a "crime of violence" for which the maximum sentence is 10 years or more in prison.  18 U.S.C. § 3142(f)(1)(A).

---

[1] Indeed, the statute presumes that release on the defendant's own recognizance or on an unsecured appearance bond will suffice.  18 U.S.C. § 3142 (b).  Only if the court determines that such release will not assure the defendant's appearance or will endanger the community may additional conditions be imposed – but the court must always impose the "least restrictive" conditions needed.  18 U.S.C. § 3142(c).

It is important to note that Bail Reform Act does <u>not</u> authorize or mandate the detention of every defendant charged with an enumerated crime. Rather, section 3142 prohibits detention unless one of the conditions/crimes set forth in that statute is present. Even then, the law does not bar or restrict release, even release on the defendant's own recognizance. Therefore, the law assumes, and experience confirms, that many individuals charged with one or more crimes listed in section 3142 are in fact, and should be, released on appropriate conditions – but no more restrictive conditions than absolutely necessary.

The government has the burden of showing probable cause to believe that the defendant committed one of those enumerated crimes. The court may rely on the indictment for the purpose. *Chen*, 820 F.Supp. at 1207. However, the court need not do so. Defense counsel is aware of no decision that provides that a court must conclude the government has met its burden to show probable cause based on the indictment alone. Given the layers of hearsay upon the government usually secures an indictment, the defendant's constitutional right to liberty should not, in at least some cases, be stripped away based solely on the existence of an indictment.[2] If there is cause to question probable cause, blind adoption of the indictment as conclusive proof of probable cause is inappropriate.

If the court concludes that the government has established probable cause that the defendant has committed one of the crimes enumerated in 18 U.S.C. § 3142(f)(1), there is a rebuttable presumption against release – that is, a rebuttable presumption that no condition or combination of conditions will reasonable assure the appearance of the defendant and the safety of the community. However, this presumption does not alter the burden of persuasion, which always remains on the government. *Chen*, 820 F.Supp. at 1207 and cases cited. Rather, this statutory rebuttable presumption imposes upon the defendant a burden to provide some facts or evidence in response to and to rebut the presumption. *Chen*, 820 F.Supp. at 1207 and cases cited. That burden is "small." *Ibid.*

---

[2] Further, the government rarely, if ever, presents mitigating or exculpatory evidence to a grand jury.

> Once the government establishes probable cause it becomes the task of the defendant to come forward with some quantum of evidence contrary to the fact presumed by the statute. Having done so, the defendant has met his obligation. The ultimate burden of persuading the trial judge or the magistrate still rests with the government. Thus when the government's showing is not clearcut the presumption is that the defendant should not be detained.

*United States v. Hurtado*, 779 F.2d 1467, 1470 (11th Cir.1985).

In determining whether to detain or release a defendant, the court is to consider (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence or involves a narcotic drug; (2) the weight of the evidence against the person; (3) the history and characteristics of the person; and (4) the nature and seriousness of the danger to any person or the community should the person be released.  18 U.S.C. § 3142(g).

The first two factors are intertwined, and relate to the charges against the defendant. Yet, this Circuit has held that the weight of the evidence is "the least important of the various factors."  *Motamedi*, 767 F.2d at 1408.[3]  However, as Chief Judge Walker observed in *Chen*, 820 F.Supp. at 1207, that observation is

> only true if the weight of the evidence is used to buttress a decision to detain the defendant.   If the evidence against a defendant is weak, that becomes an important factor favoring release.

The determination of pretrial release neither requires nor permits a pretrial determination of guilt. *United States v. Gebro*, 948 F.2d 1118, 1121-1122 (9th Cir. 1991).

With regard to the history and characteristics of the individuals before the court, the court may consider the defendant's family ties, community ties, length of residence in the community, prior criminal history, education, evidence of drug and/or alcohol abuse and similar factors.

The four factors specified in subdivision (g) are considered as they reflect on two particular circumstances: whether there is a "serious risk" of flight by the defendant prior to trial, and

---

[3] The charges already have a disproportionate impact, as the charge trigger the presumption that permits the government to argue that detention is warranted.  18 U.S.C. § 3142(e).  More weight cannot be justified consistent with the presumption of innocence and the defendant's constitutional rights delineated above.

1   whether the defendant poses a substantial danger to the community if released.  18 U.S.C. §

2   3142(f)(2)(A).

3        The government bears the burden of proof as to both factors.  As Chief Judge Walker

4   explained *(Chen, 820 F.Supp. at 1208),*

> [t]he government's burden of proof is not trivial.  If the defendant can rebut the
> statutory presumption, the government must prove that no combination of
> conditions can reasonably assure the safety of the community and the appearance
> of the defendant.  The government must point to more than the indictment to
> justify detention, and must prove by clear and convincing evidence that the
> defendant poses a danger to the community or by a preponderance of the evidence
> that the defendant poses a flight risk. *Gebro,* 948 F.2d at 1121.[4]
>
> The Ninth Circuit's "preponderance of the evidence" standard in pretrial detention
> matters is more than the usual "tips the scales slightly" test applied in civil cases.
> To give effect to the principle that doubts regarding the propriety of release be
> resolved in favor of the defendant, the court is to rule against detention in close
> cases, applying a "clear preponderance" test. *Motamedi,* 767 F.2d at 1405-1406.

As Judge Walker explained, proof by a preponderance of the evidence – much less by a

"clear" preponderance of the evidence – is not some pro forma standard met by the government's

mere assertion of the fact.  Much more is required.  As the Ninth Circuit observed, "the

preponderance of the evidence standard is a meaningful one that requires the judge to be

*convinced* by a preponderance of the evidence that the fact in question exists." *United States v.*

*Mezas de Jesus*, 217 F.3d 638, 643 (9th Cir. 2000).  Bald hearsay allegations will often not

suffice.

        Moreover, an opportunity to flee is not enough to show a serious flight risk or to justify

detention as the Act does not seek ironclad guarantees. *United States v. Himler,* 797 F.2d 156 (3rd

Cir.1986).  If the opportunity for flight was a reason to detain, virtually any defendant who had

access to interstate public transportation could be denied release for that reason. *Government of*

*Virgin Islands v. Leycock,*  678 F.2d 467, 469 (3rd Cir. 1982). The requirement that the conditions

---

[4] In fact, the Ninth Circuit has held that the government "must establish risk of flight by a **clear** preponderance of the evidence." *Motamedi,* 767 F.2d at 1406 [emphasis added].  Accord *United States v. Townsend*, 897 F.2d 989, 994 (9th Cir. 1990).

1  of release "reasonably assure" a defendant's appearance must be read to bar any requirement that

2  the Court believe there was no chance of flight. *Chen,* 820 F.Supp. at 1208.

3          Finally, in bail/detention proceedings in California superior courts, the norm is for the court

4  to set bail, and often to do so without consideration of the financial circumstances of the defendant.

5  This court is forbidden from doing so.  Section 3142(c)(2) expressly provides that "the judicial

6  officer may not impose a financial condition that results in the pretrial detention of the person."

7  That is, while a court understandably often sets the amount of bail, or a condition that the

8  defendant and/or his family post a property bond to guarantee some or all of the monetary bail sets

9  subdivision (c)(2) bars a court from setting a bond that the defendant or the family can not meet

10  due to their indigent condition.

11          These standards apply to both a magistrate, who often first considers whether a defendant

12  will be released and on what conditions, and the district court, which has jurisdiction over the

13  prosecution.  Where a defendant is ordered detained by a magistrate, the defendant may move in

14  the district court to amend or revoke the detention order.  18 U.S.C. § 3145.

15          Contrary to the government's representations to this Court on June 19th when a hearing on

16  this motion was set, this Court does NOT review the magistrate's detention order as an appellate

17  court and does NOT defer to the magistrate's findings or conclusions.  This Court does NOT

18  review a magistrate's ruling to determine if the magistrate abused its discretion with regard to the

19  defendant's release.  Rather, this Court conducts a *de novo* review; there is no deference to the

20  magistrate's decision.  E.g., *United States v. Hurtado*, 779 F.2d at 1480 ["the district court must

21  undertake a *de novo* review of the factual posture of the case and provide its own findings of fact

22  and statement of reasons for its decision"].  See *United States v. Koenig*, 912 F.2d 1190, 1191 (9[th]

23  Cir. 1990).

24          Thus, this court makes its own independent determination of all facts and conclusions

25  regarding release/detention.  As such, and again contrary to the government's representations, this

26  Court may conduct an evidentiary hearing on the issues in dispute and is NOT limited to the

27  proffers and "evidence" offered by the government to the magistrate.  Indeed, section 3142(f)

1    expressly provides that an individual facing detention has the right "to present witnesses" and/or to

2    present information by proffer or otherwise.

3        This Court's duty to decide de novo whether a defendant should be released or detained is

4    reinforced by common sense. A magistrate must conduct the government-initiated detention

5    hearing just days after the defendant's first appearance in court. While the government may have

6    had months (or years) to "build" its case against the defendant, defense counsel in almost all cases

7    knows almost nothing about the case and has little or no discovery of witness statements, etc.

8    Similarly, defense counsel has little time to contact family and friends to collect information that

9    may favorably reflect on the defendant or contest some aspect of the government's contentions. In

10   a real sense, the magistrate's decision is preliminary, and based on the overly-controlled

11   government recitation of the facts.

12       Deandre Watson does not contend that a district court judge must hold a full evidentiary

13   hearing in each case in which the court reviews a bail/detention decision. Watson does not contend

14   that every defendant facing detention is entitled to force the government to present live witnesses

15   on every issue or require the court to hear every witness the defendant wishes to present. Both the

16   statute and case law permit the government to proceed by proffer. Indeed, in many instances, the

17   facts – or least a substantial majority of the facts – will not be in dispute.

18       To acknowledge that the government may proceed by proffer is not the same as conceding

19   that a proffer will in all cases provide the court with reliable evidence to sustain the government's

20   burden of proof. In some cases, contentions of one or more individuals may be central to the issues

21   a court must resolve to rule on release/detention, but their allegations or their credibility are open to

22   serious question. Given the defendant's weighty and constitutionally recognized interest in liberty

23   prior to any jury determination of guilt, a court must consider whether a double-triple-quadruple

24   hearsay proffer does not suffice and that live testimony is warranted. As the First Circuit observed,

25
         the magistrate or judge possesses adequate power to reconcile the competing
26       demands of speed and of reliability, by selectively insisting upon the production of
         the underlying evidence or evidentiary sources where their accuracy is in question.
27       Through sensible exercise of this power of selection, the judicial officer can make

28

1    meaningful defendant's right to cross-examine without unnecessarily transforming
     the bail hearing into a full-fledged trial or defendant's discovery expedition.

2    *United States v. Acevedo-Ramos*, 755 F.2d 203, 207-208 (1st Cir. 1985).

3        In sum, this Court must make its own independent decision about detention or release of

4    Deandre Watson.  This Court does not defer to the magistrate's findings of facts or law or

5    conclusions.  If this Court finds the government has carried its burden of showing there is probable

6    cause to believe Watson committed a crime of violence, there is a rebuttable presumption that there

7    are no conditions that will reasonably assure his appearance and protect the community.  However,

8    the defendant's burden to produce evidence to rebut that presumption is "small."  The burden of

9    persuasion remains on the government.  If the presumption is rebutted, the government must show

10
11   by clear and convincing evidence that Deandre Watson is a danger to the community and by a

     "clear preponderance of the evidence" that he is a flight risk.  The government must further show
12
13   that no combination of conditions will reasonably assure the safety of the community and

14   Watson's appearance for further court appearances.

15
16   **D.    DEANDRE WATSON HAS STRONG COMMUNITY TIES AND
         DOES NOT PRESENT A DANGER TO THIS COMMUNITY**

17        Deandre Watson was only 18 years old when he was arrested for the charged offense.  He

18   turned 19 in June 2007.

19        He was born on June 17, 1988 in San Francisco to Rose Taylor and Kenneth Watson.[5]

20   Deandre's father had an on again/off again relationship with Ms. Taylor and has played no

21   significant part in Deandre's life.[6]  Deandre's mother became involved with Maurice Harrison

22   when Deandre was just a few months old, and Mr. Harrison has acted as Deandre's father ever

23   since.  Indeed, Deandre refers to him as his father.  Mr. Harrison and Ms. Taylor are the parents of

24   several children, who all reside with them at the Eddy Street address where Deandre lived when he

25   was arrested for this offense.

26   _____

27   [5] Pretrial Services interviewed Deandre prior to the detention hearing and confirmed the personal
     information set forth in this section with Deandre's mother and eldest sister, Teanna Watson.

28   [6] Mr. Watson lives in the Vacaville, California area.  While Deandre periodically speaks to his
     father by telephone, he has not seen him on a regular basis.

Deandre has lived with his parents from his birth until his arrest on this matter.[7]  He has lived in an apartment on Eddy Street in San Francisco with them for the past approximately three years.  Prior to that, he lived with his family for about six years on Watchman Way in San Francisco, two to three years in an apartment on Dakota Street in San Francisco, and before that, as a young boy, with is family on Turk Street in San Francisco.

In addition to his parents, Deandre's family consists of three sisters and four brothers.  His eldest sibling, 23-year-old Teanna Watson, works for Starbucks and is the mother of a 7-year-old boy, Teandre.  She and her son live with her parents, though she spends considerable time with her boyfriend.  Teandre, Rose Taylor's grandson, shares a bedroom in Rose and Maurice Harrison's apartment with several of their children.  Deandre's elder brother, Joseph, is not living at home.  All of his other siblings (actually, half-brothers and sisters) live with Deandre and their parents in the Eddy Street apartment.

He has attended public schools throughout his life.  Due to movements by his parents, he attended three middle schools, Potrero, Marina and Roosevelt Middle School, from which he graduated at the end of 8th grade.  Deandre has attended several different high schools (including one in Anderson Valley, California when placed in a group home).  He had recently enrolled in the Five Keys Charter School prior to his arrest to complete his high school requirements.  Staff there told Deandre that he needed just one additional course to graduate from high school.

Given his need for school and his youth, he was not regularly employed when arrested.

Pretrial Services reported to Magistrate Zimmerman that Deandre had no prior adult convictions but had a pending charge of simple possession of a firearm at the time of his arrest in this matter.  He had been released from custody on his own recognizance by the San Francisco Superior Court on that matter when he was arrested on this matter.  Pretrial Services also reported

---

[7] He was removed from his home by the juvenile court on two occasions, residing in one case in the juvenile Log Cabin ranch and in another in Anderson Valley (Mendocino County) in a group home.  In both cases, he returned to his parents' home.  Such relocation at the insistence of a court is not voluntary.  Thus, it is fair to say he has lived with his parents and siblings since birth.

that he had been arrested on a number of occasions as a juvenile, but that the disposition in all cases was not known, save for a conviction for one misdemeanor offense as a juvenile.

His family has no meaningful financial resources and owns no property. While his sister Teanna works at Starbucks, neither his father nor his mother is presently working. All three – his mother Rose Taylor, his step-father Maurice Harrison and his sister Teanna Watson – agreed to sign a bond as personal guarantors for his appearance in court.

Finally, it is noteworthy that while the carjacking charge was pending in state court, the court/sheriff **released Deandre from custody**. On March 23, 2007, just a week after his arrest and arraignment in San Francisco Superior Court, he was released from custody. Despite the seriousness of the state charges, he did not flee. He went to his parents' home. He was there later that day when San Francisco Sheriff's deputies came to his house to re-arrest him. (He apparently had been released in error.)

According to his father, both were in the living room when approximately four law enforcement officers came and knocked at the door. His father looked through the door and saw the officers and so advised Deandre. While Deandre could have run through the living room to the kitchen and out the back door, where there were no officers, and thereby escaped, Deandre and his father allowed the officers to enter and re-arrest Deandre without incident. The officers did not find any weapon or contraband in his possession or near him.

Undersigned counsel very recently checked with a San Francisco Sheriff's deputy, who checked their computer records. That deputy sheriff she confirmed that Deandre was released on March 23rd and re-arrested later that day for these charges.

These facts show that Deandre has ties only to the San Francisco community and has neither the means nor connections to facilitate flight. Indeed, his release from custody while the state carjacking charge was pending demonstrates that he is not a flight risk.

According to the government's proffer, Deandre's part in the charged crime is very limited. The sole material witness against Deandre on the issue of whether he was involved in the taking of AW's car is AW. Second, if she is to be believed and he drove off with the car, he did not any

time possess or use a weapon, nor make any threatening gesture or comment. While a gun was found in the car in which he and three others were arrested, there is no evidence that Deandre had touched or had any control over that weapon or knew it was present. It is undisputed that he did not pose any threat to any officer at the time of his arrest (or even his re-arrest on March 23, 2007 after his release while state charges were pending).

Deandre Watson contends that any concerns about his appearance in court and the safety of the community can be addressed by releasing him to a halfway house. His release would be further supported by the setting of a bail/appearance bond for which his mother, step-father and sister would all be sureties.[8] While none of those individuals has significant assets, should Deandre fail to appear in court, each would be burdened by the amount of the bail set by the court. That burden would weigh on the individuals closest to Deandre and those to whom he is most indebted emotionally.

### E.    THE GOVERNMENT CAN NOT CARRY ITS BURDEN OF PROOF TO SHOW THAT DEANDRE WATSON MUST BE DETAINED PENDING TRIAL

To detain Deandre Watson, the government must surmount four hurdles:

1) establish probable cause that he committed a carjacking;

2) show by clear and convincing evidence that he is a danger to the community;

3) show by a clear preponderance of the evidence that he is a serious flight risk; and

4) show that no condition or combination of conditions will reasonably assure his appearance for court and the safety of the community.

### 1. THE FAILURE TO SHOW PROBABLE CAUSE

The government cannot surmount the first hurdle.

---

[8] All three individuals, as well as several of Deandre's friends, came to the detention hearing before Magistrate Zimmerman.

To establish a carjacking in violation of section 2119, the government must show, *inter alia*, that AW's car was taken by force and violence or intimidation. However, it is undisputed that that AW left her car with the keys in the ignition and the engine running and walked away wholly independently of the two men who later took her car. Two men, whoever they were, walked passed her, jumped in the car and drove away. They did NOT force AW from her car or take her keys or the car from her. They jumped in an unattended car and by that act, took control of the car without the use of any force or intimidation.

The Supreme Court has held that the operative time for measuring the intent of the defendant in a carjacking case is "at the moment" that the defendant took control over the car. *Holloway v. United States*, 526 U.S. 1 (1999). Because the government itself proffered that the car was taken without any force, violence or intimidation against AW, the government has failed to establish probable cause that targeted crime occurred. In the absence of such proof, the rebuttable presumption provided in section 3142(f) does <u>not</u> apply and Deandre Watson is entitled to be released pending trial on the least restrictive conditions.

## 2. DEANDRE IS NOT A DANGER TO THE COMMUNITY

The government cannot show by clear and convincing evidence that Deandre is a danger to the community.

At the outset, it is important to note that even if the government proves a defendant is a danger to the community, pretrial detention is not permitted. As the Ninth Circuit held, "[w]e are not persuaded that the Bail Reform Act authorizes pretrial detention without bail based solely on a finding of dangerousness." *United States v. Twine*, 344 F.3d 987 (9th Cir. 2003).

In the charged offense, AW did not allege at any time that the person who drove off with the rental car away, later allegedly identified by her as Deandre Watson, threatened her or harmed her in any way. AW did not allege that the driver was armed with a gun or any weapon or in any way referred to a gun. Rather, if AW is believed – and the government's only evidence of the circumstances of the alleged crime is her account – the second suspect also walked by her on the

sidewalk without incident.  That individual – who she later alleged was codefendant Bibbs – was not carrying or displaying a gun at that time.  As AW continued to walk away from the and from them, that individual jumped into the front passenger seat of her rental car.  Only after he was inside the car and the driver was in the process of driving away, AW claimed that the passenger (Mr. Bibbs) allegedly pulled a small handgun from the interior of his clothing and brandished it towards her on the passenger side of the car.  There is no evidence or proffer that the driver ever saw a gun or knew one was brandished.

When officers later stopped that car, Deandre Watson did not resist the officers or otherwise use force.  He did not possess any gun or refer to any gun.  While a gun was found under a seat in the car occupied by four individuals, there was no evidence that Deandre Watson knew the gun was present in the car.  No one used the gun to resist the detention or arrest of all the occupants by the police.

AW's account is of a spontaneous crime sparked by her walking away from an open, unlocked car, with the key in the ignition and the engine running, at 11 at night.  The crime of taking a car is not insubstantial but is not sufficient to support pretrial detention of Deandre Watson.

Indeed, the magistrate seemed to adopt the proposition that the government had not adequately shown Deandre committed a carjacking; the magistrate only concluded that there was evidence he "committed some crime."  Exh. F at 3.  However, if the government did not establish probable cause of the charged crime of violence, Deandre is entitled to be released under the terms of the Bail Reform Act.

The issue here is not whether the crime charged is a serious one.  The issue is whether the government can prove by clear and convincing evidence that he is a danger to the community.  In that, the government has failed.  By showing his participation in some offense and failing to prove some consistent pattern of violent or threatening conduct in other incidents, the government has not discharged its burden of proof.

Deandre is only 19 years old, and lives with his parents and siblings. He has proposed that he be released to a halfway house – he is not a threat to the community there.

The magistrate also stated that Deandre suffered multiple "arrests" while a minor. Exh. F at 2. An allegation that an individual suffered an arrest, or even was charged with an offense, is not proof of any conduct, much less sufficient to satisfy due process requirements to permit pre-conviction detention. While proof of a conviction for multiple violent felonies is one thing, mere allegations or arrests or charges are of no moment in the balancing scale here. See *United States v. $215,300 in United States Currency*, 882 F.2d 417, 419 (9th Cir. 1989); *United States v. $67,220.00 in United States Currency*, 957 F.2d 280, 286 (6th Cir. 1992).

That conclusion is supported by the standards used by a court at sentencing in determining a defendant's criminal history. The government bears the burden of establishing by a preponderance of the evidence that a prior conviction or the defendant's status increases the defendant's criminal history. E.g., *United States v. Kemp*, 938 F.2d 1020, 1025 (9th Cir. 1991). The government's argument and evidence must be "of sufficient quality to convince the district court's mind of the truth of the proposition asserted." *United States v. Frushon*, 10 F.3d 663, 666 (9th Cir. 1993). Plainly, an allegation, that a defendant was arrested or charged for a particular crime, is insufficient for a court to consider in weighing the defendant's prior criminal history.

Finally, the magistrate noted that the government claimed that Deandre was facing charges that he was in possession of a handgun at the time of the charged incident and that a gun was recovered at his parents' home by law enforcement officers. Exh. F. at 2-3.

Several points are important. First, with regard to a gun allegedly found in his parents' home, it is not a crime in California to possess a gun in one's home. Second, while many individuals in the community do not like guns, simple possession of gun – even if proven – is not an act of violence or an act creating danger to the community.[9] Third, with regard to the pending

---

[9] Possession of a gun is not a crime of violence, which requires that the conduct include the use or threatened use of violence or that involves a substantial risk of use force against a person. 18 U.S.C. § 3156(a)(4). See *United States v. Carter*, 996 F.Supp. 260, 262-263 (W.D.N.Y. 1998) [illegal dealing or importation of firearms not a crime of violence]; *United States v. Twinel*, 344

1   state charge, it is noteworthy that the state court judge ordered that Deandre be released on his own

2   recognizance on that matter pending trial.

3

### 3. DEANDRE IS NOT A FLIGHT RISK

5       Deandre has lived his whole life with his parents and siblings in San Francisco. He has no

6   meaningful contact with any distant or removed place. He has no assets to facilitate flight and

7   possesses no passport. It is telling that when he was released from custody on this very case on

8   March 23, 2007, he went home where he was re-arrested. Even then, he could have fled from the

9   officers who came to arrest him, but did not. He meekly submitted to their authority.

10      The magistrate's conclusions are confusing and, at least in part, flawed in several regards.

11  Exh. F.

12      Even if the government has shown probable cause that Watson committed a triggering

13  crime of violence under section 3142(f)(1), Watson's burden is small and only to produce some

14  evidence to rebut the presumption. The magistrate suggested he did so – "the defendant may have

15  dispelled the presumption of risk of flight." Exh. F at 2. Indeed, the magistrate stated that he

16  would likely release Deandre Watson on a bond signed by his three family members if the risk of

17  flight was the only factor. Exh. F at 2.

18

19      However, the magistrate also wrote that the length of his possible sentence provides some

20  "incentive to flee." But that is true for any criminal defendant facing a jail sentence and true for

21  any defendant charged with any of the triggering crimes in subdivision (f). The possibility of even

22  a long sentence does not mean there is a real risk of flight. Given that Deandre did NOT flee when

23  released in March 2007, and that all his family and community ties are in San Francisco, there is no

24  meaningful risk of flight. And any modest risk would be counterbalanced by placing his father,

25  mother and sister in financial debt if they signed on a bond and he fled. No, there is no cause to

26  detain Deandre Watson on this score.

27

28  F.3d 987 (9th Cir. 2003)[crime of felon in possession of firearm not a crime of violence under Act].

The magistrate's claim that "defendant's ties to the community are mixed" is contrary to the evidence, not to mention the government's burden. The magistrate's conclusion was rooted in two claims – that he had no employment history and "his educational record is not good." To condemn an 18-year old boy for not having an employment history is completely unwarranted. Deandre was still finishing school – and his movement among several schools during his youth due to the movement of his family to different apartments and directions of the juvenile courts should not be held against him. He may not be a scholar, but we do not jail young men prior to trial because they are not "A" students (though in this, there was even no evidence of that offered by the government).

### 4. THE PROPOSED CONDITIONS REASONABLY ASSURE BOTH HIS PRESENCE IN COURT AND THE SAFETY OF THE COMMUNITY

Mindful of the serious charge pending against him, Deandre Watson does not suggest that he be released on his own recognizance or on an unsecured bond signed only by him. It is clear from the record that he has strong community ties and his family and is not a flight risk. However, assuming the government can show by clear and convincing evidence that Deandre is a danger to the community, a conclusion which he resists, that concern can be addressed in several ways.

First, if Deandre's mother, father and sister all sign as guarantors on the bond, they will be liable should he violate the terms of his release. Thus, he will know that a violation of the court's order puts those he most loves, and to whom he is most indebted personally, will substantially burden them.

Second, Deandre suggests that he be released to a halfway house, where both his actions and movements can be closely monitored. He will not be a danger to others or real flight risk there.

Third, this Court can fashion restrictive conditions regarding his contacts in the community that will eliminate any chance for misbehavior.

1    It is important to remember that in authorizing any pretrial detention, the Bail Reform Act,
2    and the decisions applying it, have made clear that only a "reasonably assurance" that the
3    defendant will not be danger to the community and will appear for future court appearances is
4    required. Certainty is not the watch word. By that appropriate standard, this Court should release
5    Deandre Watson under these conditions.

6    The seminal Ninth Circuit decision on pretrial release, *Motamedi*, supports the release of
7    Deandre Watson. Motamedi was charged with conspiring to illegally export arms to Iran. He was
8    an Iranian citizen. Because of the alleged involvement of the Iranian government in the alleged
9    crimes, Motamedi could return to Iran with impunity, safe from American extradition. Motamedi
10   had large foreign bank accounts, which held deposits from the Iranian government, showing that
11   not only did Motamedi have the means to flee but was being supported by the Iranian government.
12   Nevertheless, the Court of Appeals held that the government did not carry its burden of showing
13   that Motamedi was a flight risk, and that ruled the district court erred in ordering his detention.

14   The decision by the District Court in *Chen* is similarly instructive. There, Kelly Chen was
15   one of five defendants charged with possession with intent to distribute $1,000,000,000 (yes, one
16   billion dollars, according to the government) worth of heroin, the largest heroin seizure in the
17   history of the United States. They faced life sentences, and the charged crime triggered the
18   rebuttable presumption here.

19   
20   Kelly Chen was a lawful resident of the United States, and had lived in the U.S. for many
21   years. However, she was a Taiwanese citizen. The U.S. had no extradition treaty with Taiwan. If
22   she fled the country, she would be beyond the reach of the U.S. courts. She and her husband
23   owned and operated a local motel, were the parents of several children and were well integrated in
24   the community. Her family could offer modest equity in some property, but the same property
25   would be used to support the release of her co-defendant husband and co-defendant sister-in-law.
26   Despite the potential life-sentence and her ability to flee to a safe haven, the court held she had
27   presented sufficient evidence about her local ties to rebut the statutory presumption for pretrial
28   detention and to justify her release. 820 F.Supp. at 1211.

**CONCLUSION**

There is a serious question whether there is probable cause to believe that Deandre Watson committed an offense that triggers a presumption of detention under the Bail Reform Act. However, even if the government has carried that burden, Deandre Watson has carried his "small" burden of producing evidence to rebut that presumption. In that light, the government cannot show by a clear preponderance of the evidence that Deandre Watson poses a "serious risk of flight," which cannot be addressed by appropriate conditions. Similarly, the government cannot show by "clear and convincing evidence" that Deandre Watson poses a danger to the community, which cannot be addressed by appropriate conditions. Thus, this Court should order his release from custody pending trial. Deandre Watson's constitutional rights permit no other result.

DATED: July 5, 2007                              Respectfully submitted,

                                                /s/
                                                Scott A. Sugarman
                                                Attorney for Deandre Watson

1

## LIST OF EXHIBITS

2

A.    DEFENDANT BIBBS' MOTION FOR LIVE TESTIMONY

3

B.    DEFENDANT WATSON'S JOINDER

4

C.    GOVERNMENT OPPOSITION TO MOTION FOR LIVE TESTIMONY

5

6

D.    DEFNDANT BIBBS' REPLY TO OPPOSITION

7

E.    ORDER DENYING DEFENDANTS' APPLICATION FOR LIVE TESTIMONY

8

F.    ORDER OF DETENTION AS TO DEFENDANT WATSON

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant Watson's Motion to Revoke Detention Order