1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

EXHIBIT C

1  SCOTT N. SCHOOLS (SC 9990)
   United States Attorney
2
   MARK L. KROTOSKI (CSBN 138549)
3  Chief, Criminal Division

4  WILLIAM FRENTZEN (LABN 24421)
   Assistant United States Attorney
5
       450 Golden Gate Avenue, Box 36055
6      San Francisco, California 94102-3495
       Telephone: (415) 436-6959
7      FAX: (415) 436-6753
       Email: william.frentzen@usdoj.gov
8
   Attorneys for Plaintiff
9

10              UNITED STATES DISTRICT COURT

11              NORTHERN DISTRICT OF CALIFORNIA

12                 SAN FRANCISCO DIVISION

13

14  UNITED STATES OF AMERICA,          )    No. CR 07-0336 WHA (BZ)
                                        )
15         Plaintiff,                   )
                                        )    **UNITED STATES' RESPONSE TO**
16      v.                              )    **DEFENDANTS BIBBS' PRE-**
                                        )    **DETENTION HEARING**
17  MAURICE BIBBS, and                  )    **MEMORANDUM**
    DEANDRE WATSON,                     )
18                                      )
           Defendants.                  )
19  _____ )

20

21  INTRODUCTION

22         Defendant Bibbs is scheduled for a detention hearing on June 7, 2007.  In advance of this

23  hearing, defendant has filed a lengthy memorandum objecting to the government proceeding by

24  proffer at the detention hearing.  Because the caselaw makes clear that both parties may proceed

25  by proffer at a detention hearing, the United States opposes defendant's baseless effort to convert

26  the detention hearing into a full-blown evidentiary hearing.

27  ARGUMENT

28  I.     The United States is Entitled to Proceed By Proffer at the Detention Hearing.

UNITED STATES' RESPONSE TO PRE-DETENTION HEARING MEMORANDUM                    1
No. CR 07-00336 WHA (BZ)

Defendant Bibbs objects to the government's use of proffers at the detention hearing. The governing statute and caselaw, as well as the long-standing practice in this District, are directly to the contrary and make clear that the government may proceed by proffer at a detention hearing.

A.    The Bail Reform Act Provides for the Use of Proffers and Relaxes Evidentiary Requirements at Detention Hearings.

The Bail Reform Act provides that a defendant may, among other things, "present information by proffer or otherwise" at a detention hearing.  18 U.S.C. § 3142(f).  The Act also greatly relaxes evidentiary requirements at detention hearings, providing that "[t]he rules concerning admissibility of evidence in criminal trials do not apply to the presentation and consideration of information at the hearing."  *Id.*  Quoting a D.C. Circuit case, defendant notes that while the Act explicitly allows a defendant to proceed by proffer at a detention hearing, "the Act is 'silent upon the question whether the Government may do so."  Def. Memo. at 3 (quoting *United States v. Smith*, 79 F.3d 1208, 1210 (D.C. Cir. 1996)).  But defendant fails to note the *Smith* court's response to this statutory silence.  Not only did the D.C. Circuit hold in *Smith* that the government may present evidence by proffer at a detention hearing: it also noted that "[e]very circuit to have considered the matter ... has ... permitted the Government to proceed by proffer" at a detention hearing.  *Smith*, 79 F.3d at 1210.

The Ninth Circuit is one of the circuits that has considered the matter.  In *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986), that court held squarely that "the government may proceed in a detention hearing by proffer or hearsay."  The Ninth Circuit also held that "[t]he accused has no right to cross-examine adverse witnesses who have not been called to testify" at a detention hearing.  *Id.*  Thus, it is settled law in this circuit – and has been settled law for over 20 years – that the government may proceed by proffer and that a defendant has no right to cross-examine witnesses who do not testify at a detention hearing.

B.    The Fifth and Sixth Amendments Present No Bar to Proceeding by Proffer.

Defendant attempts to unsettle this settled law by arguing that the Fifth and Sixth Amendments bar the use of proffers by the government at a detention hearing.  Defendant's Fifth

1   Amendment argument is easily disposed of, since the Ninth Circuit in *Winsor* rejected Winsor's

2   argument "that due process requires a defendant in a pretrial detention hearing be afforded rights

3   of confrontation and cross-examination." *Id.* In other words, the Ninth Circuit has long

4   established that there is no general Fifth Amendment right to cross-examine witnesses or to bar

5   the government from proceeding by proffer at a detention hearing.[1] Moreover, defendant has

6   failed to present any adequate, specific-to-this-case factual basis for mandating that government

7   witnesses testify and be cross-examined at the detention hearing in this specific case.

8           Defendant's argument under the Sixth Amendment has no more merit than his argument

9   under the Fifth. Defendant claims that under *Crawford v. Washington*, 541 U.S. 36 (2004), the

10  Sixth Amendment's Confrontation Clause bars the use of proffers and hearsay evidence at a

11  detention hearing. But magistrate judges of this court have repeatedly rejected this very same

12  argument. For example, Judge Laporte and Judge Chen both held last year that there is no Sixth

13  Amendment right to cross-examine witnesses at a detention hearing, since detention proceedings

14  are regulatory rather than penal. *United States v. Henderson*, No. CR 05-0609 JSW (May 31,

15  2006) (attached as Exhibit A); *United States v. Wade*, No. CR 06-0287 MHP (July 19, 2006)

16  (attached as Exhibit B). *See also United States v. Salerno*, 481 U.S. 739, 746 (1987) ("pretrial

17  detention under the Bail Reform Act is regulatory, not penal"). As such, the right to

18  confrontation does not apply. *See Pennsylvania v. Ritchie*, 480 U.S. 39, 52 (1987) (Sixth

19  Amendment's "right to confrontation is a <u>trial</u> right") (emphasis in original);[2] *United States v.*

20  _____

21          [1]      *United States v. Hall*, 419 F.3d 980 (9th Cir. 2005), and *United States v. Comito*,
22  177 F.3d 1116 (9th Cir. 1999), on which defendant relies, are not relevant here because they do
    not address pretrial detention hearings and instead deal with supervised release revocation
23  hearings. The distinction is important, since (as we describe below) detention hearings are
    purely regulatory proceedings. Supervised revocation hearings are not and instead have a penal
24  nature. Even if *Hall* and *Comito* were relevant here, they would conflict directly with *Winsor's*
25  square holding that the government is entitled to proceed by proffer and hearsay at a detention
    hearing. To the extent defendant seeks to have *Winsor* overruled based on *Hall*, *Comito*, or any
26  other case, that is a request properly addressed to the Ninth Circuit, not this Court.

27          [2]      Defendant attempts to distinguish *Ritchie* by arguing that *Ritchie* "did not address
28  the question of whether the defendant has a right to cross-examine adverse witnesses in pretrial
    hearings." Def. Memo. at 6 n.2. But the same is true for *Crawford*, the case on which defendant

1   *Littlesun*, 444 F.3d 1196, 1199 (9th Cir. 2006) ("*Crawford* speaks to **trial** testimony") (emphasis

2   added).[3]  The D.C. Circuit has specifically rejected the argument that permitting the government

3   to proceed by proffer at a detention hearing violates a defendant's "right under the Sixth

4   Amendment to confront his accusers." *Smith*, 79 F.3d at 1210.  The Ninth Circuit's decision in

5   *Winsor* also undercuts defendant's Sixth Amendment argument.  While the *Winsor* court did not

6   reference the Sixth Amendment directly, apparently because the defendant there failed to argue

7   under the Sixth Amendment, the Ninth Circuit did reject Winsor's arguments that allowing the

8   government to proceed in a detention hearing by proffer or hearsay violated his "rights of

9   confrontation and cross-examination."  *Winsor*, 785 F.2d at 756.

10          C.      The Court Should Not Order Production of Witnesses as a Matter of Discretion.

11          Defendant Bibbs argues that even if the government generally is permitted to offer

12   evidence by proffer at a detention hearing, the Court nevertheless should exercise discretion to

13   require the United States to produce witnesses at the detention hearing here.  Def. Memo. at 16.

14   Defendant offers no specific basis for why this Court should take this extraordinary step of

15   ordering a full-blown evidentiary hearing, other than to note that "this is a serious case ... ." *Id.*

16   In other words, without presenting any specific factual basis defendant asks this Court to

17   override the rule established by the Ninth Circuit in *Winsor* that "the government may proceed in

18   a detention hearing by proffer or hearsay." *Winsor*, 785 F.2d at 756.  There is no basis for such

19   an action.

20          In fact, this is a case in which any need for a proffer by the government is more lacking

21   than most.  First, defendants were charged initially in this case by way of Complaint and Warrant

22   which Magistrate Judge Vadas issued upon his finding of probable cause that they had

_____

24   seeks to rely.

25          [3]      There are at least two problems with defendant's efforts to rely on *United States
26   v. Abuhamra*, 389 F.3d 309 (2d Cir. 2004), for his Sixth Amendment arguments.  First,
     *Abuhamra* addresses the Sixth Amendment's right to public trial, not its right to confrontation.
27   Second, the *Abuhamra* court noted that "the presentation of evidence at bail hearings may be
     more informal than at probable cause and suppression hearings" and made no suggestion that
28   there is a constitutional problem with that "informal" presentation of evidence. *Id.* at 323-24.

UNITED STATES' RESPONSE TO PRE-DETENTION HEARING MEMORANDUM          4
No. CR 07-00336 WHA (BZ)

1   committed a carjacking.  Second, following the Magistrate's finding, a Grand Jury issued an

2   Indictment which demonstrated that it had made a finding of probable cause that the defendants

3   had committed the offenses of carjacking, 18 U.S.C. § 2119, and using, carrying, possessing and

4   brandishing a firearm in connection with a crime of violence, 18 U.S.C. § 924(c)(1), and also

5   that defendant Bibbs had committed the offense of tampering with a witness, 18 U.S.C. §

6   1512(b)(1).  Third, the Grand Jury's finding that the defendants had violated 18 U.S.C. §

7   924(c)(1) carries with it a presumption in favor of detention.  18 U.S.C. § 3142(e).  Therefore,

8   the burden of production at the detention hearing rests firmly upon the defendants.[4]  The

9   government has no burden of production unless defendants can make some showing adequate to

10  rebut this presumption.  Fourth, this is a case in which the State court saw fit to detain the

11  defendants since their arrests on March 15, 2007.  Finally, this is also a case which involves

12  threats to witnesses as demonstrated by the Grand Jury's Indictment.  Given all of these

13  considerations, this is a particularly poor example of a case where the Court should ignore the

14  law and order a pretrial mini-trial.

15  CONCLUSION

16         For the foregoing reasons, the United States respectfully asks the Court to follow the

17  Ninth Circuit's decision in *Winsor* and permit the government to proceed by proffer at the

18  detention hearing.

19

20  DATED: June 5, 2007                          Respectfully submitted,

21                                               SCOTT N. SCHOOLS
                                                 United States Attorney
22

23                                                        /s/
                                               _____
24                                             William Frentzen
                                               Assistant United States Attorney

25

26  _____

27         [4] Because of the offenses charged, defendant Bibbs' contention that "[t]he Government
    bears the burden of proving that the defendant is a flight risk by a preponderance of the evidence
28  and danger by clear and convincing evidence," Def. Memo. at 16, is simply inaccurate.

UNITED STATES' RESPONSE TO PRE-DETENTION HEARING MEMORANDUM                    5
No. CR 07-00336 WHA (BZ)

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | No.:  CR 05-0609 JSW |
| | ) | |
| Plaintiff, | ) | |
| | ) | **ORDER OF DETENTION** |
| v. | ) | **PENDING TRIAL** |
| | ) | |
| | ) | |
| LEONARDO HENDERSON, | ) | |
| | ) | |
| Defendant. | ) | |
| ———————————————— | ) | |

## I.    INTRODUCTION

Defendant Leonardo Henderson was arraigned on an indictment charging him with being a felon in possession of a firearm on May 11, 2006 before the Honorable Elizabeth D. Laporte, United States Magistrate Judge.  At the request of the government upon its proffer of a serious risk that the defendant would flee based on his attempt to elude arrest when police sought to affect a traffic stop of a car in which he was a passenger holding a gun, the Court ordered a detention hearing.  See 18 U.S.C. § 3142(f)(2)(A).  On May 18, 2006 at 9:30 a.m., the Court held the detention hearing.  The defendant was present and represented by Geoffrey Hansen, Assistant Federal Public Defender.  Assistant United States Attorney Gregg W. Lowder represented the United States.

Pretrial Services submitted a report recommending detention, based upon both a serious risk that the defendant would flee and that the risk of danger to the community or persons in the

1   community.  Among other factors, Pretrial Services pointed to the defendant's numerous

2   criminal convictions, several of which involved violence; the defendant's repeated parole and

3   probation violations, many of which involved new criminal conduct; the bench warrants issued

4   for the defendant, which might indicate a failure to appear as ordered, although other

5   explanations were possible as well; and the defendant's failure to abide by the conditions of his

6   current parole.

7           Upon consideration of the Pretrial Services report, proffers of the government orally and

8   in writing and arguments of counsel, the Court finds by a preponderance of evidence that there

9   exists a serious risk the defendant will flee if released and that no condition or combination of

10  conditions of release will reasonably assure the appearance of the defendant as required.  On this

11  basis the Court orders the defendant detained.

12          The Court additionally finds by clear and convincing evidence, based upon the Pretrial

13  Services report, proffers of the government and arguments of counsel, that the defendant's

14  release will endanger the safety of other persons and the community and that no condition or

15  combination of conditions of release will reasonably assure the safety of other persons and the

16  community.  This finding of dangerousness presents a separate, independent basis for detention.

17  The Court also orders the defendant detained on this basis.  Even if the Court did not also find

18  danger, however, the Court would detain the defendant based on flight risk alone.

19          The present order supplements the Court's findings at the detention hearing and serves as

20  written findings of fact and statement of reasons as required by 18 U.S.C. section 3142(i).

21  **II.     DISCUSSION**

22          The Court first must decide two threshold issues raised by the defendant: whether the

23  Court may consider the issue of danger to the community even though the defendant has not

24  been charged with a crime of violence or other grounds under section 3142(f)(1) and the

25  detention hearing was triggered by the risk of flight alone; and whether this defendant has a right

26  to have the government proceed through live testimony rather than proffer and to cross-examine

2

1  the government's witnesses.

2      **A.**    **The Court Must Consider Evidence Of Danger And May Order Detention**
            **On The Alternate Ground That The Defendant Poses A Danger To The**
3              **Community Even Where The Sole Basis For Requesting A Detention**
            **Hearing Was Flight Risk.**

4

5        The defendant argues that this Court is prohibited from considering evidence of the

6  danger to the community that he might pose and from detaining him based on that ground

7  because the Government requested a detention hearing on the ground of flight risk alone, and

8  because he was not charged with a crime of violence or any other of the specified grounds set

9  forth in section 3142(f)(1).  Neither the Bail Reform Act of 1984, 18 U.S.C. sections 3141-50,

10  nor case law in the Ninth Circuit dictates that result.

11        The Bail Reform Act requires courts to hold a detention hearing under certain

12  enumerated circumstances, including "upon motion of the attorney for the Government in a case

13  that involves . . . a crime of violence . . . or . . . a serious risk that such person will flee."  18

14  U.S.C. § 3142(f).  The purpose of the hearing is to determine whether any release conditions

15  "will reasonably assure the appearance of such person as required and the safety of any other

16  person and the community . . . ."  Id.  The defendant here was not charged with a crime of

17  violence or eligible for a detention hearing on other grounds set forth in section (f)(1).  Rather,

18  the government moved for pretrial detention and the Court agreed to set a detention hearing

19  solely on the serious risk that the defendant will flee.

20        Section 3142(g) sets forth mandatory factors that the Court must consider in a detention

21  hearing:

22          The judicial officer shall, in determining whether there are conditions of
release that will reasonably assure the appearance of the person as required and
23  the safety of any other person and the community, take into account the available
information concerning–(1) the nature and circumstances of the offense charged,
24  including whether the offense is a crime of violence or involves a narcotic drug;
(2) the weight of the evidence against the person; (3) the history and characteristics of the
25  person, including– . . . past conduct, history relating to drug or alcohol abuse, criminal history,
and record concerning appearance at court proceedings; and whether at the time of the current
26  offense or arrest, the person was on [release] pending trial, sentencing, appeal or completion of a
sentence for [another offense]; and (4) the nature and seriousness of the danger to any person or

Detention Order: Leonardo Henderson     3

1    the community that would be posed by the person's release. . . .

2

3    Thus, a plain reading of this statute requires the Court to consider all these factors at a detention

     hearing even though the defendant was not charged with a crime of violence. The statute does
4
     not indicate that only certain factors should be examined depending on the ground for the
5
     hearing. Rather, it instructs courts to consider all the factors set forth. If Congress intended
6
     courts only to consider the factor of danger to the community in cases where a detention hearing
7
     was set on the grounds set forth in sub-section (f)(1), it could have said so. Further, by
8
     restricting the circumstances in which a hearing may properly be held and then requiring release
9
     of all other defendants, the statute narrows the category of defendants eligible for detention.
10
              Defendant relies on cases from the First and Third Circuits holding that a court may not
11
     order pretrial detention on grounds of danger alone when the detention hearing was set based on
12
     flight risk and not danger. See United States v. Ploof, 851 F.2d 7 (1st Cir. 1988); United States
13
     v. Himler, 797 F.2d 156 (3d Cir. 1986). The government mistakenly argues that in these cases,
14
     the United States did not seek a detention hearing on the ground of risk of flight. In Ploof, the
15
     government moved for a hearing under both (f)(1) and (f)(2), but the court detained the
16
     defendant only on the ground that he was a danger to the community. 851 F.2d at 10. In Himler,
17
     the government moved for detention on risk of flight, and while the magistrate judge detained
18
     the defendant on both flight and danger, the district court affirmed the detention order solely on
19
     danger and made no finding on flight. 797 F.2d at 158. In another case the defendant relies on,
20
     United States v. Byrd, 969 F.2d 106, 107 (5th Cir. 1992), the Fifth Circuit cited Ploof and Himler
21
     before concluding that a "detention hearing can only be held in a case that involves a crime or
22
     circumstance set out in § 3142(f) of the [Bail Reform] Act." Id. at 110. Unlike in Ploof and
23
     Himler, however, the parties in Byrd had stipulated that the defendant was not a flight risk, and
24
     although the government moved for detention on grounds that the defendant was a danger to the
25
     community, it failed to offer any evidence of danger at the hearing.
26
              Defendant correctly points out that the Ninth Circuit in United States v. Twine concluded

Detention Order: Leonardo Henderson        4

1  that a defendant charged as a felon in possession, which it determined was categorically not a

2  crime of violence, could not be detained based solely on a finding of dangerousness, without

3  reference to any of the triggers for a detention hearing.  344 F.3d 987 (9th Cir. 2003) (citing

4  Byrd, Ploof, and Himler).  In Twine, however, the Court did not necessarily need to reach the

5  question presented here of whether, when a detention hearing of one accused of being a felon in

6  possession is triggered by risk of flight, a clear and convincing showing of dangerousness may

7  support detention at the hearing.  In Twine, the magistrate judge had not specified whether the

8  hearing was triggered by flight or danger, and ordered the defendant detained based on danger

9  alone.  The district court upheld the detention based on danger to the community and also held

10  alternatively that the crime charged was a crime of violence.  344 F.3d at 987.  Neither the

11  magistrate judge nor the district court judge made a finding that the defendant posed a serious

12  risk of flight.  The Ninth Circuit reversed on both grounds, holding that the crime of felon in

13  possession categorically is not one of violence for purposes of the Bail Reform Act, without

14  addressing whether a hearing could have been triggered by flight risk.  Thus, Twine did not

15  address the mandatory language of section 3142(g) requiring consideration at bail hearings of the

16  potential danger to the community in the context of a detention hearing based on flight.

**B.      Absent Any Indicia Of Unreliability, The Court May Rely On Proffers Offered At The Detention Hearing.**

19        The defendant also argues that he is entitled to cross-examine witnesses under both the

20  Confrontation Clause of the Sixth Amendment and the Due Process Clause of the Fifth

21  Amendment.  First, the Court concludes that no such right exists under the Sixth Amendment.

22  Under the Confrontation Clause, criminal defendants have the right to confront "testimonial"

23  witnesses during their criminal prosecution.  See Crawford v. Washington, 541 U.S. 36 (2004).

24  By contrast, a detention hearing under the Bail Reform Act is a regulatory proceeding, not a

25  penal one.  See United States v. Salerno, 481 U.S. 739, 746 (1987); see also United States v.

26  Perry, 788 F.2d 100, 117 (3d Cir. 1986) ("Although the preventive detention determination is

Detention Order: Leonardo Henderson                5

Case 3:07-cr-00336-JW    Document 84-2    Filed 05/30/51    57    Page 6 of 11

1    made incidental to a criminal prosecution, commitment on the basis of dangerousness to the

2    community is civil, not criminal").  Moreover, the Ninth Circuit has squarely held that "the

3    government may proceed in a detention hearing by proffer or hearsay."  United States v. Winsor,

4    785 F.2d 755, 756 (9th Cir. 1986) (citing United States v. Cardenas, 784 F.2d 937, 938 (9th Cir.

5    1986)); see also United States v. Littlesun, 444 F.3d 1196, *8 (9th Cir. 2006) ("Crawford speaks

6    to trial testimony, not sentencing").

7           Second, even the cases that the defendant cites emphasize that courts have discretion

8    whether to accept proffers or require live testimony and cross-examination, and generally only

9    go beyond proffers when circumstances indicate that the proffers are insufficiently reliable on

10   crucial points.  See United States v. Hammond, 44 F. Supp. 2d 743, 746 (D. Md. 1999) ("[C]ase

11   law supporting detention upon government proffers in no way requires a judicial officer to

12   accept or accredit proffered evidence, nor does that case law assume that proffers in lieu of live

13   testimony are appropriate in every case [but it] supports the discretion of the reviewing judicial

14   officer to require the presentation of evidence. . . ."); United States v. Comito, 177 F.3d 1166,

15   1168, 1171-72 (9th Cir. 1999) (district court should have afforded opportunity for cross-

16   examination where defense counsel proffered based on interview of key witness whose original

17   hearsay accusations formed the basis for an increased penalty for  supervised release violation

18   that the witness had recanted and admitted that she had lied to police).

19          Thus, although there may indeed be circumstances where a defendant has a limited right

20   to due process to cross-examine because the government's proffer is unreliable, no such

21   circumstances exist here.  During the detention hearing, the Court asked whether the defendant

22   had any factual basis for arguing that the government's proffers were unreliable.  The

23   defendant's counsel declined the opportunity to make a proffer on this point, arguing instead that

24   requiring a defendant to do so as a prerequisite for cross-examination would violate his right

25   against self-incrimination, particularly when a defendant and the arresting officers were the sole

26   witnesses.  The Court questions whether there might not be some other indicia of unreliability

Detention Order: Leonardo Henderson          6

1   that a defendant could proffer, such as a prior history of inaccurate statements by a particular

2   arresting officer. In any case, here, in addition to the arresting officers, government proffered

3   that two other witnesses, the driver and another passenger, were in the car when police attempted

4   to stop the vehicle and these witnesses told the police that the defendant told the driver not to

5   stop because he had an outstanding warrant. The defense could have interviewed these

6   percipient witnesses and if their accounts cast doubts on the accuracy of the government's

7   proffer, made a proffer on that basis. The defense did not do so. The defendant accordingly has

8   given this Court no reason to suspect that the government's proffer was unreliable.

9           **C.      Balancing the 18 U.S.C. section 3142(g) Factors**

10          As stated above, the Bail Reform Act of 1984 sets forth four factors which the Court

11  must consider in determining whether pretrial detention is warranted. These factors are

12  paraphrased as follows:

13              (1) the nature and seriousness of the offense charged;

14

15              (2) the weight of the evidence against the person;

16              (3) the history and characteristics of the person including, among other

17              considerations, employment, past conduct and criminal history, and records of

18              court appearances; and

19              (4) the nature and seriousness of the danger to any person or the community that

20              would be posed by the person's release.

21  18 U.S.C. § 3142(g).

22          With regard to the first factor, the nature and seriousness of the offense charged, although

23  it is not itself a crime of violence, it is a serious offense in light of the defendant's efforts to

24  avoid detection and his background of four convictions for violent crimes in little more than ten

25  years. The nature of the offense is reflected in the oral and written proffers of the government.

26  The proffers indicate that uniformed police officers in a marked patrol car used their lights and

Detention Order: Leonardo Henderson            7

1   sirens to attempt to stop a car shortly after midnight for several Vehicle Code violations.  The

2   police followed the car for several blocks with its lights and sirens on, but the car did not yield.

3   The car slowed at one point and the defendant opened the rear passenger door and started out,

4   but, seeing the police, got back in the car and closed the door.  The car proceeded on, eventually

5   going several blocks.  The defendant did the same thing a second time as the car again slowed

6   down but did not stop.  The car turned a last corner and continued on, then stopped near mid-

7   block.  The defendant again opened the rear door, got out and started running.  Two officers

8   chased the defendant on foot and, while right behind the defendant, saw him reach into his

9   waistband area and pull out a handgun and throw it.  One officer stopped and recovered the

10  handgun, which was loaded.  The foot chase continued until an officer drew a firearm on the

11  defendant.  The defendant stopped and dropped to his knees.  He put his left hand in his

12  waistband area.  Officers immediately grabbed each arm.  The defendant resisted the pulling of

13  his left hand out of his waistband, a struggle ensued and the defendant was ultimately overcome

14  and arrested.  The defendant was determined to have an outstanding parole violation warrant.

15        Police interviewed the driver and the front passenger of the car after giving them their

16  *Miranda* rights, and both gave statements.  The front passenger, Jerri Martin, stated that they had

17  just been picked up the defendant at a Bart Station when the police attempted to stop their car.

18  The defendant ordered her boyfriend, the driver of the car, not to pull over because the defendant

19  had a warrant.  The driver, Juan Daniel Rodriguez, told the police a similar story and added that

20  as he started to pull over, he saw the defendant pull a firearm from his waist and the defendant

21  told Rodriguez to keep going because he had a warrant.  While the defendant was preparing to

22  get out of the car, Rodriguez saw the defendant trying to put the gun under the seat.  Rodriguez

23  told the defendant that he had to take his gun with him.

24        The Court finds these facts significant to the detention decision because, among other

25  things, they indicate that the defendant knew he had a warrant out for his arrest and did not

26  surrender himself.  Rather, his reaction upon encountering police was to flee to avoid capture by

Detention Order: Leonardo Henderson          8

1   the police and to resist when ultimately captured.  His resistance upon capture was consistent

2   with his record for convictions of battery upon public safety officials, as discussed below.  This

3   conduct alone supports a finding by a preponderance of the evidence that the defendant poses a

4   risk of flight.  The Court also finds that the struggling and resistance of the defendant when

5   caught, given the circumstances in which he knew he had a parole warrant, in conjunction with

6   his criminal history discussed below, supports by clear and convincing evidence that the

7   defendant is a danger to the community.

8       The second factor of the weight of the evidence points slightly in favor of detention.  See

9   Winsor, 785 F.2d at 757.  However, it is the least important factor to be considered.  See

10   Cardenas, 784 F.2d at 939.

11      The third factor, the defendant's history and characteristics, provide further evidence that

12   he is a flight risk as well as a danger to the community.  Defendant's criminal history is

13   particularly informative.  Based on the Pretrial Services report, the defendant has had a long,

14   essentially continuous history of criminal conduct resulting in convictions followed by probation

15   and parole violations.  Since 1993, the defendant has suffered seven convictions on six different

16   dates.  Four convictions, each on a separate date, involved elements of violence, including one

17   conviction for robbery, two convictions for battery on police or emergency personnel, and his

18   most recent conviction, in 2003, for battery involving domestic violence.  The defendant has

19   performed poorly on probation, having his grants of probation modified eight different times to

20   add additional custodial time, and having his probation revoked four times.  Both of the

21   defendant's grants of probation following felony convictions resulted in revocations and

22   sentences to prison.

23      The government proffered that the defendant also performed poorly on parole, having his

24   parole revoked at least four times, in 1998, 1999, 2000 and 2002.  His 2002 parole revocation

25   was then followed in 2004 by the revocation of his felony probation and another prison

26   commitment.  At the time of his arrest in this case, the defendant had an outstanding parole

Detention Order: Leonardo Henderson          9

1   warrant. The defendant's parole officer was interviewed for the Pretrial Services report and

2   stated that the defendant failed to report on parole and left a program, and the officer opined that

3   the defendant's parole performance was "extremely poor." The defendant's criminal history, as

4   reflected in the Pretrial Services report, also indicated that he had several bench warrants issued

5   for him in 2003 and 2004.

6          The defense argued the defendant had no proven failures to appear, and poor

7   performance on probation or parole fails to bear on whether the defendant would appear as

8   required. The Court believes that the defendant's lack of amenability to supervision is acutely

9   demonstrated by his probation and parole performance and that the defendant's pattern of failure

10  to adhere to conditions of release creates an enhanced risk in the future that he will not appear as

11  required, whether or not he has done so in the past. In short, the defendant's history indicates

12  that he lacks the kind of reliability that would reasonably assure the defendant's appearance as

13  ordered or the safety of the community. In conclusion, the Court finds by a preponderance of

14  evidence that no conditions or combination of conditions will reasonably assure the defendant's

15  appearance as required, based on both the defendant's attempt to elude and resist arrest in

16  connection with the current offense and his outstanding parole warrant, as well as his criminal

17  history. The Court also finds, based on the defendant's history, his characteristics and his

18  resistance to arrest, by clear and convincing evidence that no condition or combination of

19  conditions of release will reasonably assure the safety of the community. On each basis the

20  Court orders the defendant detained.

21         Accordingly, pursuant to 18 U.S.C. § 3142(i), IT IS ORDERED THAT:

22         (1) the defendant be, and hereby is, committed to the custody of the Attorney General for

23  confinement in a corrections facility separate, to the extent practicable, from persons awaiting or

24  serving sentences or being held in custody pending appeal;

25         (2) the defendant be afforded reasonable opportunity for private consultation with his

26  counsel; and

Detention Order: Leonardo Henderson          10

Case 3:07-cr-00336-JW    Document 8-2    Filed 05/30/2007    Page 11 of 11

1      (3) on order of a court of the United States or on request of an attorney for the

2   government, the person in charge of the corrections facility in which the defendant is confined

3   shall deliver the defendant to an authorized Deputy United States Marshal for the purpose of any

4   appearance in connection with a court proceeding.

5

6   Dated: May 31, 2006                          *Elizabeth D. Laporte*

7                                                ELIZABETH D. LAPORTE
                                                 United States Magistrate Judge
8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

Detention Order: Leonardo Henderson          11

1   KEVIN V. RYAN (CSBN 118321)
    United States Attorney
2
   MARK L. KROTOSKI (CSBN 138549)
3   Chief, Criminal Division

4   ANDREW P. CAPUTO (CSBN 203655)
    Assistant United States Attorney
5
        450 Golden Gate Avenue, Box 36055
6       San Francisco, California  94102
         Telephone:  (415) 436-7004
7       Facsimile:  (415) 436-7234
         E-mail: andrew.caputo@usdoj.gov
8
   Attorneys for Plaintiff
9

10               UNITED STATES DISTRICT COURT

11            NORTHERN DISTRICT OF CALIFORNIA

12              SAN FRANCISCO DIVISION

13   UNITED STATES OF AMERICA,    )   No.: CR 06-0287 MHP
                        )
14           Plaintiff,      )
                        )   **ORDER OF DETENTION**
15          v.          )   **PENDING TRIAL**
                        )
16                        )
   BOBBY WADE,            )
17                        )
            Defendant.    )
18   _____)

19       This matter came before the Court on July 17, 2006, for a detention hearing.  Defendant,

20   Bobby Wade, was present and represented by Chief Assistant Federal Public Defender Geoffrey

21   D. Hansen.  Assistant United States Attorney Drew Caputo appeared for the United States.

22       Pretrial Services submitted a report to the Court and the parties that recommended

23   detention, and a representative of Pretrial Services was present at the hearing.  The Government

24   requested detention, and Defendant opposed.  Proffers and arguments regarding detention were

25   submitted by the parties at the hearing.

26

   DETENTION ORDER
   CR 06-0287 MHP

1    For the reasons set forth in this Court's Order of Detention Pending Trial dated 12/9/05

2    in *U.S. v. Henderson*, CR 05-0672 MHP and Judge Laporte's Order of Detention Pending Trial

3    dated 5/31/06 in *U.S. v. Henderson*, CR 05-0609 JSW, the Court finds that the Sixth Amendment

4    right of confrontation does not apply to detention hearings, but that general principles of Due

5    Process applies pursuant to *U.S. v. Comito*, 177 F.3d 1166 (9th Cir. 1999) and *U.S. v. Winsor*,

6    785 F.2d 755, 757 (9th Cir. 1986).  For the reasons stated on the record, the factors relied upon

7    by the Court in finding flight risk are based on undisputed facts and documented evidence.  The

8    Court has not relied on evidence of questionable reliability where the truth-seeking function of

9    this Court's determination would be substantially enhanced by the presentation of live witnesses

10   subject to cross examination.

11        Upon consideration of the facts, proffers and arguments presented, the Court finds by a

12   preponderance of the evidence that no condition or combination of conditions of release will

13   reasonably assure the appearance of Defendant as required.  Accordingly, the Court concludes

14   that Defendant must be detained pending trial in this matter.

15        The present order supplements the Court's findings at the detention hearing and serves as

16   written findings of fact and a statement of reasons as required by 18 U.S.C. § 3142(i)(1).

17        The Bail Reform Act of 1984, 18 U.S.C. §§ 3141–50, sets forth four factors that the

18   Court must consider in determining whether pretrial detention is warranted.  These factors are:

19        (1)  the nature and circumstances of the offense charged (§ 3142(g)(1));

20        (2)  the weight of the evidence against the person (§ 3142(g)(2));

21        (3)  the history and characteristics of the person including, among other

22        considerations, character, employment, family, and past conduct and criminal

23        history (§ 3142(g)(3)); and

24        (4)  the nature and seriousness of the danger to any person or the community that

25        would be posed by the person's release (§ 3142(g)(4)).

26        With regard to the first factor, the nature and circumstances of the offense charged,

DETENTION ORDER
CR 06-0287 MHP                              2

1    Defendant is accused of unlawful possession of a firearm and ammunition, in violation of 18

2    U.S.C. § 922(g)(1).  It is uncontested in this case that Defendant had to be apprehended by the

3    police after a foot chase.  While there may be a dispute as to the events leading up to the chase,

4    the fact that Defendant had to be apprehended after a chase was not disputed.  This fact militates

5    in favor of detention here, as it demonstrates risk of flight.

6         The second factor, the weight of the evidence, is considered the least important.  The Bail

7    Reform Act neither requires nor permits a pretrial determination of guilt.  *United States v.*

8    *Gebro*, 948 F.2d 1118, 1121–22 (9th Cir. 1991).  The Court notes that according to the arresting

9    officers, during the chase, Defendant threw a sock containing a loaded .38 caliber revolver onto

10   the ground.  The Court accords little weight, however, to this proffer.

11        The third factor, the history and characteristics of Defendant, supports detention.

12   Defendant has a recent conviction in 2005 for evading a police officer.  According to the police

13   report, he led police on a high speed automobile chase for several miles, then fled on foot.  He

14   also has used a series of aliases in his contacts with law enforcement officers over the years,

15   utilizing six (6) different names in his contacts with police.  He was convicted in 2003 of False

16   Identification to Peace Officer.  Defendant has suffered six (6) felony and two (2) misdemeanor

17   convictions in the last seven (7) years.  In 2005, he violated his parole and was sent to Pelican

18   Bay.  Defendant's community ties further support detention here, as he lacks a stable

19   employment and residential history.  He has not presented any responsible adults to serve as

20   sureties.

21        For the fourth factor, the nature and seriousness of danger to the community, the Court

22   makes no specific findings because the United States sought detention solely based on flight risk.

23        Accordingly, based on the evidence presented at the hearing, the Court finds by a

24   preponderance of the evidence that no condition or combination of conditions of release will

25   reasonably assure the appearance of Defendant as required.

26

DETENTION ORDER
CR 06-0287 MHP                          3

1    Pursuant to 18 U.S.C. § 3142(i), IT IS ORDERED THAT:

2    (1) Defendant be, and hereby is, committed to the custody of the Attorney

3    General for confinement in a corrections facility separate, to the extent

4    practicable, from persons awaiting or serving sentences or being held in custody

5    pending appeal;

6    (2) Defendant be afforded reasonable opportunity for private consultation with his

7    counsel; and

8    (3) on order of a court of the United States or on request of an attorney for the

9    government, the person in charge of the corrections facility in which Defendant is

10   confined shall deliver defendant to an authorized Deputy United States Marshal

11   for the purpose of any appearance in connection with a court proceeding.

12

13

14   Dated: July 19, 2006

15                                              HON. EDWARD M. CHEN
                                                United States Magistrate Judge

16

17

18

19

20

21

22

23

24

25

26

DETENTION ORDER
CR 06-0287 MHP                    4