EXHIBIT D

1  BARRY J. PORTMAN
   Federal Public Defender
2  GEOFFREY A. HANSEN
   Chief Assistant Federal Public Defender
3  19th Floor Federal Building – Box 36106
   450 Golden Gate Avenue
4  San Francisco, CA 94102
   Telephone: (415) 436-7700
5
   Counsel for Defendant Bibbs
6

7

8           IN THE UNITED STATES DISTRICT COURT

9           FOR THE NORTHERN DISTRICT OF CALIFORNIA

10

11 UNITED STATES OF AMERICA,          )   No. CR 07 - 336 WHA
                                      )
12                 Plaintiff,         )   DEFENDANT BIBBS'S REPLY TO
                                      )   GOVERNMENT'S OPPOSITION TO
13 vs.                                )   PRE-HEARING MEMORANDUM RE:
                                      )   DETENTION HEARING PROCEDURE
14 MAURICE BIBBS,                     )
                                      )
15                 Defendant.         )
                                      )
16 _____

17
        The Government begins its reply to the defendant's motion to be granted the right to
18
   confront adverse witnesses at the detention hearing by arguing that due to the Ninth Circuit's
19
   decision in *United States v. Winsor,* 785 F.2d 755 (9th Cir. 1986), it may proceed by way of
20
   proffer at a detention hearing; as the Government puts it, the issue "has been settled law for over
21
   20 years." Gov. Opp. at 2. The problem with this somewhat simplistic reasoning is that *Ohio v.*
22
   *Roberts,* 448 U.S. 56 (1980), which denied a defendant the Sixth Amendment right to confront
23
   adverse witnesses if a hearsay exception applied to the witness statement, was "settled law" for
24
   over 20 years until the Supreme Court decided *Crawford v. Washington,* 124 S.Ct. 1354 (2004).
25
   In addition, *Winsor* predates the Ninth Circuit's decisions in both *United States v. Comito,* 177
26

DETENTION MEMORANDUM                    1

1  F.3d 1166 (9th Cir. 1999), and *United States v. Hall*, 419 F.3d 980 (9th Cir. 2005), both of which
2  create a new and much more detailed constitutional analysis of a defendant's due process right to
3  confront adverse witnesses in criminal proceedings.

4  *Winsor* is certainly of questionable validity in light of these three decisions, and the
5  defendant stands by his arguments distinguishing *Winsor* set forth in his original papers. Proffers
6  are simply no longer acceptable substitutes for live testimony in detention hearings, and this
7  Court must look at recent Supreme Court and Ninth Circuit decisions to decide the issue
8  presented by the defendant here.

**A. Confrontation Clause**

To its credit, the Government does not completely rely on *Winsor* to respond to the defendant's Sixth Amendment and due process arguments. Regarding Mr. Bibb's claim that under *Crawford* the defendant has the right to confront adverse witnesses, the Government claims first that other Magistrate Judges in this district have rejected this same claim in other proceedings. This assertion is true, but it does not mean that the decisions were correctly reasoned, nor have any been published.[1] Second, the Government again resorts to an oft-made and totally misplaced argument that detention hearings are "regulatory" and not "penal," and thus the Sixth Amendment does not apply. The Government refers in part to an unpublished decision by Judge LaPorte in *United States v. Henderson,* where she cites *United States v. Perry*, 788 F.2d 100, 117 (3d Cir. 1986), for the proposition that "commitment on the basis of dangerousness to the community is civil, not criminal."

It is certainly true that when courts were first confronted with arguments that detention hearings resulted in pretrial punishment of a defendant in violation of the *Eighth Amendment,* courts ruled that the act of detention was a civil commitment and not "punishment" for purposes

---

[1] At least two other Magistrate Judges have ruled that a defendant does not have a right to confront adverse witnesses under the Confrontation Clause. As the Court can see from Judge Chen's unpublished decision in *United States v. Wade*, attached to the Government's reply, Judge Chen has concluded that there is a due process right to confront adverse witnesses.

DETENTION MEMORANDUM                    2

of the Eighth Amendment. But those rulings have nothing to do with the issue whether a detention hearing is part of a criminal prosecution for purposes of the *Sixth Amendment*. What exactly does the Government mean when it says that a detention hearing is a "regulatory" or "civil" proceeding?" That it is a civil matter divorced from the criminal case? If so, then the defendant accepts the Government's argument, and the defendant will notice depositions before the detention hearing in conformance with civil procedures. Of course, as noted in his original papers, Mr. Bibbs would note that all of the rules and statutes governing detention hearings are contained in the criminal codes and rules of procedure, which suggests that the hearings are in fact part of the criminal prosecution, which means that the Sixth Amendment is applicable. Again, if the Government is correct that a detention hearing is a special form of administrative/civil proceeding, then it should point to where in the APA or civil rules such hearings are addressed. There are no such rules, because the court decisions referring to the "regulatory" nature of detention decisions refer to the *characterization of the act of detention*, and have nothing to do with the *procedural rights* afforded defendants at these hearings. Detention hearings are part of the criminal prosecution, and are not ancillary regulatory proceedings.

The Government refers this Court to Judge LaPorte's further ruling in *Henderson* that a defendant has no Sixth Amendment right to confront witnesses because the Ninth Circuit has "squarely" decided the Sixth Amendment issue raised above.

Judge LaPorte's assertion is not exactly true, considering the cases she relied upon. Both *United States v. Winsor*, 785 F.2d 755, 756 (9th Cir. 1986), and the case it relies upon, *United States v. Cardenas*, 784 F.2d 937, 938 (9th Cir. 1986), addressed due process claims which were raised by the defendant – not Sixth Amendment claims. Moreover, both cases pre-date the *Crawford* decision. Thus, neither case is direct authority rejecting the arguments presented above.

The third case cited by Judge LaPorte, *United States v. Littlesun*, 444 F.3d 1196 (9th Cir. 2006), is more interesting. *Littlesun* addresses the issue whether a defendant has the right to confront adverse witnesses at a sentencing hearing, and concluded that no such right existed.

DETENTION MEMORANDUM                3

1  However, the Court was careful to note that "Littlesun's argument nonetheless has some force,"
2  but was controlled by the Supreme Court's decision in *Williams v. New York*, 337 U.S. 241
3  (1949): "... it is not for us to overrule the Supreme Court's decision in *Williams*." *Littlesun*, 444
4  F.3d at 1199-1200.

5  Here, no Supreme Court decision addresses the issue whether the Confrontation Clause
6  applies to detention hearings. Thus, this Court is free to address the issues raised by Mr. Bibbs.[2]

7  **B. Due Process**

8  With respect to the defendant's due process claims, aside from its *Winsor* claim the
9  Government attempts to distinguish *Hall* and *Comito* by arguing that these decisions do not apply
10 because they involved supervised release violation hearings and not detention hearings. The
11 quick answer to this claim is the argument the defendant makes at some length in his original
12 papers; because a defendant is presumed innocent at a detention hearing, and because his liberty
13 interests are even more pronounced at a detention hearing, the rights which should be afforded a
14 defendant at such a hearing can be no less than those afforded a defendant at a supervised release
15 hearing.

16 In response to these arguments, the Government once again refers this Court to Judge
17 LaPorte's reasoning in *Henderson*, where she concluded that the due process right to confront
18 adverse witnesses only applies when there appears to be some issue about the validity of the
19 Government proffer – apparently when the defendant presents a counter proffer of some sort
20 which calls into question the Government's hearsay assertions. There are legal and practical
21 problems with this ruling.
22 //

---

[2] It should be noted that insofar as the Government feels free to cite unpublished decisions of other courts, this Court may wish to look at the record in *Henderson*. The defendant there filed a motion to revoke Judge LaPorte's order, and asked Judge White to finally resolve the issues presented above. The matter was fully briefed to Judge White by the defendant, and the Government, rather than respond to the defendant's arguments, made an offer to the defendant which quickly resolved the case, thereby avoiding a decision from Judge White.

DETENTION MEMORANDUM                 4

1    As a legal matter, no court, and specifically the Supreme Court, has ever ruled that the right to confrontation embodied in the due process clause requires a "counter-proffer" before it becomes operative. If that was the case, cross examination would only exist where the defendant or another witness could directly contradict a prosecution witness, which is rarely the case. Moreover, when, for example, the only witness other than a police officer is the defendant himself, to require the defendant to make a counter-proffer would require the defendant to waive his fifth amendment right to remain silent. Again, no court has ever held that a defendant can secure his right to cross examine a witness only by relinquishing his right to remain silent.

As a practical matter, detention hearings are held within three days of a defendant's first appearance in court, and witnesses are not even identified by the parties prior to the hearing. To require a counter-proffer means that at some meaningful time before the detention hearing the Government must tell the defendant what witness statements it plans to rely upon in its proffers so that the defendant can attempt to interview the witness or investigate the assertions in time to make a counter-proffer. The magnitude of this undertaking is incredible. Judge LaPorte suggested, for example, that defense counsel proffer "a prior history of inaccurate statements made by a particular arresting officer." Order at 7. This Court is certainly aware of the problems associated with obtaining personnel records for officers which might identify past incidents of lying under oath – problems which have caused this Court to promulgate a special rule that requires a 10 day notice for subpoenas for such records. To suggest that defense counsel obtain those records and submit a counter-proffer in time for the Magistrate Judge to order the Government to produce the witnesses at the detention hearing is simply not possible. In contrast, the Court could simply order the Government to have its witnesses present at the detention hearing when the hearing is set at the initial appearance, or to have proof as to why, under the *Comito* balancing test, the witness could not be produced in a timely fashion. This procedure is infinitely more workable than the alternative suggested by Judge LaPorte, and indeed appears to be the system followed in virtually every other district in this circuit other than this one.

DETENTION MEMORANDUM                    5

In short, as Judge Chen has ruled, the defendant has a due process right to confront adverse witnesses at a detention hearing. That right is not contingent upon any showing by the defendant, and is every bit as robust and meaningful as the rights set forth for defendants in the *Comito* and *Hall* cases.

### C. Discretion to Order Witnesses

In addition to the arguments made above, the Government argues that the Court should not as a matter of its discretion order the Government to produce witnesses in part because this is a presumption case, and thus, the government asserts without authority, the defendant's claim that the Government must present evidence supporting detention "is simply inaccurate." Gov. Opp. at 5 n 4.

This assertion exhibits a profound misunderstanding of the nature and effect of a presumption in a detention hearing. A presumption does not free the Government from meeting its burden at a detention hearing; even the Fifth Circuit has ruled that "the Government cannot reasonably argue that the § 3142(e) presumption, coupled with the allegations of the indictment . . . are alone sufficient to satisfy § 3142(g)." *United States v. Jackson*, 845 F.2d 1262, 1266 (5th Cir. 1988). As the *Jackson* court noted, the presentation of extrinsic evidence supporting the request for detention "is a required feature of the government's proof." *Id.* at 1266. *See also United States v. Cox*, 635 F.Supp.1047, 1050,1057 (D. Kan. 1986)(unrebutted presumption not sufficient to justify detention). Thus, the Government is mistaken when it contends that it can simply proffer the Indictment and not present any evidence to support its request for detention.

//
//
//
//

DETENTION MEMORANDUM                    6

1      The claims contained in the complaint affidavit in this case will be vigorously disputed by
2  the defendant. As a matter of procedural fairness, the Government must be ordered to produce
3  witnesses at the detention hearing.

4                                       Respectfully submitted,

5                                       BARRY J. PORTMAN
6                                     Federal Public Defender

7                                         /S/

8                                     GEOFFREY A. HANSEN
                                   Chief Assistant Federal Public Defender

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26