SCOTT A. SUGARMAN (No. 68277)
SUGARMAN & CANNON
44 Montgomery St., Suite 2080
San Francisco, CA. 94104
Telephone: (415) 362-6252
Facsimile: (415) 677-9445

Attorneys for Defendant
     DEANDRE WATSON

IN THE UNITED STATES DISTRICT COURT

FOR THE NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | No. CR 07-0336 WHA |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | |
| ) | |
| DEANDRE WATSON, ) | DATE: July 23, 2007 |
| ) | TIME: 9:00 a.m. |
| Defendant. ) | |

**DEFENDANT DEANDRE WATSON'S REPLY TO THE GOVERNMENT'S JOINT OPPOSITION TO DEFENDANTS' MOTION TO AMEND OR REVOKE DETENTION ORDERS**

The prosecutor's rant is neither illuminating nor correct. Rather, the Opposition ignores much of statement of law and the facts in Deandre Watson's Motion to Amend the Detention Order, and failures to refute most of what Watson offered. When the Opposition deigns to make a substantive statement, rather than a broad generalization, the Opposition is generally wrong. The Opposition fails to demonstrate that this case is one of the "rare circumstances" identified by then-Judge Kennedy in the seminal detention decision in this Circuit in which the release of defendant Deandre Watson should be denied. *United States v. Motamedi,* 767 F.2d 1403, 1407 (9th Cir. 1985).

### I.   THE GOVERNMENT HAS NOT DISPUTED DEANDRE WATSON'S STATEMENT OF FACTS

In the Memorandum in support of the Motion to Amend/Revoke the Detention Order, Deandre Watson detailed his substantial community ties and family relationships. In the main, those facts were before the Magistrate, though not in all the detail presented here. The government has not disputed any of those facts.

Rather, the government' parrots the insupportable generalization that Deandre's claims show no stability etc. Nonsense. He has lived her all his life, as has his family. While he may not have a nice new car or a comfortable residence like the prosecutor, as he and his family are poor, he is plainly committed to this community. He has not other roots, and no other place to which to flee.

The prosecutor's pitiful attempt to dismiss the significance of the state's apparent mistaken release of Deandre Watson a week after he was charged in San Francisco Superior Court does not undermine the import of that act. Opp. at 5, fn. 2. Once released, Deandre did not flee to another place – he knew the charges were still pending, but went home. He was at home when the officers came to take him back into custody. Deandre had a means to escape, but did not. Deandre had the means to hide or resist, but he did not. Those actions not only make any claim that he will flee ridiculous, but tend to show he is not a danger to the community and rebut the rebuttable presumption, if any, to the contrary.

It is hard to know whether it is government overreaching or disregard for the truth, but it is insupportable for the prosecutor to claim that Deandre has a "substantial" juvenile record. Opp. at 4. Rather, the evidence presented to the magistrate – and none was offered by the government then – was that Deandre was found, as a minor, to have committed a misdemeanor battery. Once. This exaggeration among many other should lead this Court to discount the government's claim as unworthy of belief if not independently supported.

## II. THE GOVERNMENT HAS NOT DISPUTE THE LEGAL PRINCIPLES SET FORTH IN DEFENDANT WATSON'S MEMORANDUM

At the time this Court set this Motion for hearing, counsel for the government and the defendants disagreed about the applicable standards and legal principles that would guide this Court in deciding this Motion. In light of the disagreement, this Court asked counsel to discuss those principles and standards.

In Deandre Watson's Memorandum, counsel discussed those principles at some length, demonstrating that the standards that defense counsel advised this Court should be applied were in fact the governing standards. Watson Mem. at 4-11. It is telling that the prosecutor, by his silence and concessions, now does not dispute Watson's summary of the law.

In short, this Court examines the issue of a defendant's detention *de novo*, mindful that only in "rare circumstances" may a defendant be detained upon a compelling showing that no combination of conditions will suffice. *Motamedi*, 767 F.2d at 1407. The individual standards that must be followed in making that decision are set forth in Watson's Memorandum in support of his Motion.

The prosecutor again suggests that the "evidence" – really just the government's arguments and some information provided by Pretrial Services – presented to the Magistrate suffices. No, it does not. The decisions cited in the Memorandum make clear that this can and should examine any information or evidence that bears on this very important decision to impose jail before trial. The prosecutor has failed to present any evidence, but just rehashes broad claims that are mostly false.

Finally, as Watson detailed in his Memorandum at page 6, even if a rebuttable presumption has been triggered, "this rebuttable presumption does not alter the burden of persuasion, which always remains on the government." The government does not dispute the burden of surmounting all the hurdles to detention remains on the government.

### III. BECAUSE THE GOVERNMENT FAILED TO SHOW PROBABLE CAUSE THAT DEANDRE WATSON COMMITTED A CRIME OF VIOLENCE, THERE WAS NO PRESUMPTION IN FAVOR OF DETENTION AND HE WAS ENTITLED TO BE RELEASED

In Watson's Motion and Memorandum, he argued that the rebuttable presumption against release was triggered only if the government established that there was probable cause that <u>he</u> committed a crime of violence. The government does not dispute that proposition or that it has the burden of proof. The government just cavalierly asserts that it showed probable cause, relegating the important legal issue to a footnote. Opp. at 5, fn. 1.

There are two reasons for this Court to conclude that government has not carried its burden of proof.

First, under the government's scenario, the alleged crime was a spontaneous one. The complainant, "AW" as the government calls her, allegedly walked away from her car at 11:30 p.m. on a March night, with the key in the ignition, the engine running and the radio playing. She was at some distance from her car when two men, who she did not know, walk past. No threats etc of any kind were made by either to AW. Then she saw both men get in the car and begin to drive away. AW claimed that as she turned – and no doubt shouted the equivalent of "what the hell are you doing" – the man in the passenger seat pulled out a small black handgun and pointed the weapon in her direction. She turned away and began to move away, when she allegedly heard the gun click.

It is apparent that this was, at most, a crime of opportunity, spontaneously committed. There is no evidence that the driver – alleged to be Deandre Watson – ever saw or touched the alleged gun, or saw it displayed. AW claims it was taken from the recesses of the passenger's clothing (Mr. Bibbs is alleged by the government to be the person who possessed the gun). Hence, the government has not shown that Watson committed a crime of violence.

Second, the government concedes that 1) the two men did not in any way threaten AW or apply any force to her to take possession of the car or the car keys – the car was unattended and the

keys were in the ignition; and 2) that AW was well outside the car when the two entered the car and began to drive away – no force was applied or intimidation used to effect that taking. Based on those facts and applicable case law, including the Supreme Court's decision in *Holloway v. United States*, 526 U.S. 1 (1999), Deandre Watson argued that there was no probable cause to believe he committed the crime of carjacking as defined in federal law (California law is different).

The prosecutor bases its disagreement with that conclusion, and thus its contention that the crime was carjacking, on one quote from one decision, *United States v. Burns*, 701 F.2d 840. That decision is of no help to the prosecutor.

First, the facts there are dramatically different than here. As the *Burns*' Court explained, the defendant was charged with two robberies (no carjacking). 701 F.2d at 841.

> In the first robbery, on December 9, 1980, Burns and two accomplices robbed a tribal smoke shop located in Indian country. The second robbery also occurred in the smoke shop, in the midst of the first robbery. Burns approached the victim, Fillmore and, at gunpoint, demanded the keys to Fillmore's car. After Fillmore told Burns that the keys were in the car, Burns left the shop and stole the keys and the car.

Here, under the government's recitation of the facts, the two men did not demand keys from AW and then take her rental car. The keys and car were together, and unlike in *Burns*, the suspects did not demand either from AW. They jumped in an unoccupied, running car.

Second, Burns argued that the taking of Fillmore's car did not constitute a robbery. The Court disagreed, nothing that in light of the undisputed facts there, the jury could find that Burns committed a robbery. "The trial court correctly instructed the jury that "property is in the presence of a person if it is 'so within his reach, inspection, observation or control, that he could if not overcome by violence or prevented by fear, retain his possession of it.'" 701 F.2d at 843.

Burns was not charged with carjacking; indeed, the federal carjacking statute did <u>not</u> come into existence for another decade. The terms of the two crimes are materially different. Indeed, as Watson pointed out – and the prosecutor has not disputed – *Holloway* makes clear that the critical time for measuring the elements of a carjacking is the "moment" the defendant takes control of vehicle, not later. Hence, the *Burns*' instruction has no bearing on instructions or

elements for carjacking, which were expressly limited by Congress when it crafted the carjacking statute.

Indeed, even if that observation was applicable, when the two men jumped in the rental car, AW was in no position to re-claim or re-take the car. The car was on its way "down the road;" it was taken without any intimidation or use of force by Watson.

## CONCLUSION

Deandre Watson concedes the pending charge is serious. He does not make light of it in any way. However, the issue here is not whether the state has proved him guilty of the crime; it has not and that is not a matter for this Court at this time. However, the weakness of the evidence on certain elements weigh, as the Court observed in *United States v. Chen*, 820 F.Supp. 1205 (N.Cal. 1992) in favor of release, not detention. Indeed, if the government has not proved probable cause on each element, this Court must release Deandre.

However, even if there were no such issues, it is unreasonable to conclude he is a serious flight risk. If the defendants in *Chen* were not a flight risk – facing life in prison upon the recovery of $1,000,000,000 or more in heroin, where they were citizens of another country[1] -- the government has not shown that Deandre Watson is a serious risk to flee. It is similarly unreasonable to conclude that the government has shown by clear and convincing evidence that Deandre – who, even under the government's theory of the case, **never** used or threatened violence during the course of the charged crime – poses a real danger to the community. Anticipating that the government would argue that Deandre was a danger, he offered to be placed in a halfway house. Clearly, his behavior in such a facility can be closely monitored and controlled. The Court can then judge whether he is likely to be dangerous, or if he can assist in preparing his defense outside, rather than, inside a jail cell.

---

[1] And, those defendants were faithful to the Court's expectations – they appeared for each and every court appearance after their release. Indeed, when for a series of court appearances the out-of-custody defendants routinely arrived in court on time and well before the in-custody defendants in the custody of the U.S. Marshall, the judge in that case stated that maybe all defendants should be released and the case could proceed more promptly.

Defendant Watson's Reply to Government Opposition re: Motion to Amend Detention Order

1    Accordingly, this Court should revoke the order of detention and permit the release of
2 Deandre Watson on a bond signed by his mother, step-father and sister, and upon condition that
3 he be released to a half-way house, and such other conditions as this Court may deem necessary.
4 DATED: July 17, 2007                                            Respectfully submitted,

6                                                                 Scott A. Sugarman
                                                                  Attorney for Deandre Watson

Defendant Watson's Reply to Government Opposition re: Motion to Amend Detention Order